**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CURVER LUXEMBOURG, SARL,

                **Plaintiff,**

      vs.

HOME EXPRESSIONS INC.,

                **Defendant.**

Civ. No. 2:17-cv-4079-KM-JBC

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Curver Luxembourg, SARL ("Curver") is the owner of a design patent, No. D677,946 ("the '946 Patent"), which claims an overlapping "Y" design. Curver alleges that Home Expressions Inc. ("Home Expressions") makes and sells a basket that incorporates this design and therefore infringes the '946 Patent. Now before the court is defendant Home Expressions' motion to dismiss the Complaint. (ECF no. 13).[1] For the following reasons, Home Expressions' motion is granted.

---

[1]    Citations to the record are abbreviated as follows:

"Compl." = Complaint (ECF no. 1)

"'946 Patent" = Patent D677,946 (ECF no. 7)

"Ex. 2" = Plaintiff's Exhibit 2 (ECF no. 7-1)

"Ex. 3" = Plaintiff's Exhibit 3 (ECF no. 7-2)

"Def. Br." = Memorandum of Points and Authorities in Support of Home Expressions Inc.'s Motion to Dismiss (ECF no. 13-1)

"Ex. A" = Defendant's Exhibit A (ECF no. 13-3)

"Ex. B" = Defendant's Exhibit B (ECF no. 13-4)

"Pl. Br." = Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF no. 15)

1

## I.  BACKGROUND[2]

Curver, a Luxembourg corporation, owns the '946 Patent, which is titled "Pattern for a Chair." (Compl. ¶ 1; '946 Patent). Home Expressions is a New York corporation with its principal place of business in New Jersey. (Compl. ¶ 2).

The '946 Patent claims the ornamental "Y" design pictured below:

**Figure 1**



(Compl. ¶ 7; '946 Patent).

Curver's original design patent application was not accepted by the U.S. Patent and Trademark Office ("PTO"). (Ex. A). Curver originally applied for a design patent with the titles "Furniture Part" and "Furniture (Part of)." (Ex. A). The PTO objected, explaining:

> The title of the design must *designate the particular article*, which is the subject of the design. 37 CFR 1.153. The title of the design

---

[2]  For purposes of this motion to dismiss I take all allegations in the complaint to be true and draw all inferences in favor of Curver as plaintiff. *See* Section II.A, *infra.*

identifies the article in which the design is embodied by the name generally known and used by the public. MPEP 1503, I. (Ex. A). Curver rectified this by resubmitting the design patent for "[t]he ornamental design for a pattern for a chair." ('946 Patent); (Ex. A; Ex. B). Each figure in the patent was now described as a view of a "design for a pattern for a chair." ('946 Patent).

Curver makes and sells storage baskets that incorporate the patented "Y" design. (Compl. ¶ 8). Home Expressions sells storage baskets that are allegedly "identical" to baskets sold by Curver. (Compl. ¶ 10). Home Expressions' baskets allegedly contain "each element of the claimed design in the '946 Patent," as well as unprotected elements of Curver's basket, such as an alternating matte and glossy finish on the bottom surface. (Compl. ¶¶ 11-12). Figure 2 shows an example of Curver's basket. (Ex. 2). Figure 3 shows an example of Home Expressions' baskets. (Ex. 3).

<b>Figure 2</b>     <b>Figure 3</b>




On June 6, 2017, Curver filed a complaint against Home Expressions, claiming that the manufacture, use, sale, offer for sale, and/or importation of Home Expressions' basket constitutes patent infringement under 35 U.S.C. § 271 *et seq.* (Compl. ¶ 11). Curver seeks a permanent injunction and

damages. (Compl.). Home Expressions filed a motion to dismiss Curver's claim on July 24, 2017. (ECF no. 13).

## II.    LEGAL STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70-73 (3d Cir. 2011);

4

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129-30 (3d Cir. 2010). In doing so, it has provided a three-step process for evaluating a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal*, 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 134 & n.7 (3d Cir. 2016); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

## B. Design Patent Infringement

Federal patent law permits those who invent designs for manufactured articles to patent their designs. 35 U.S.C. § 171(a). Patent protection is available for a "new, original and ornamental design for an article of

manufacture."[3] *Id.* A patentable design "gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 525 (1871); *see also Samsung Elecs. Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 432-33 (2016).

In general, a patent infringement analysis involves two steps: claim construction and claim comparison.

First, the court construes the patent. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372-74 (1996); *see MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007). Claim construction is an issue of law committed to the district judge for determination. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1337 (Fed. Cir. 2015); *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (holding that claim construction is "a matter of law exclusively for the court").

In the case of design patents, which involve matters of physical appearance, the claim construction process is often uncomplicated. Relevant precedent requires that the court simply construe the design patents as they are shown in the patent drawings. *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, 540-41 (D.N.J. 2012). "Design patents are typically claimed as shown in drawings, and claim construction must be adapted to the pictorial setting." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed.

---

[3]     "Article of manufacture" has a broad meaning, but essentially describes any product. As the Supreme Court explained in *Samsung*,

> An "article" is just "a particular thing." J. Stormonth, A Dictionary of the English Language 53 (1885) (Stormonth); see also American Heritage Dictionary, at 101 ("[a]n individual thing or element of a class; a particular object or item"). And "manufacture" means "the conversion of raw materials by the hand, or by machinery, into articles suitable for the use of man" and "the articles so made." Stormonth 589; see also American Heritage Dictionary, at 1070 ("[t]he act, craft, or process of manufacturing products, especially on a large scale" or "[a] product that is manufactured"). An article of manufacture, then, is simply a thing made by hand or machine.

*Samsung Elecs. Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 434-35 (2016).

Cir. 2010). "Depictions of the claimed design in words can easily distract from the proper infringement analysis of the ornamental patterns and drawings." *Id.*; *see Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008); *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002).

At the second step of this analysis, the design patent's claims (as now construed) are compared to the allegedly infringing products. *See PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). This step involves a factual determination. *See id.* at 1364. When considering infringement of a design patent, courts use the "ordinary observer" test. *Crocs*, 598 F.3d at 1303. Under the ordinary observer test, infringement occurs:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871); *Egyptian Goddess*, 543 F.3d at 670-71. This test was codified in the Patent Act of 1952, which provides as follows:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289.

Infringement is not found unless the accused article embodies the patented design or any colorable imitation of it. *Egyptian Goddess*, 543 F.3d at 678. If no ordinary observer could determine that the allegedly infringed patent and the allegedly infringing article are substantially the same, dismissal is appropriate. *Id.*; *see MSA Prods.*, 883 F. Supp. 2d at 541. Thus, while

infringement is a question of fact, courts may dismiss claims of design infringement on a Rule 12(b)(6) motion where, as a matter of law, no reasonable factfinder could find infringement. *See Vigil v. Walt Disney Co.*, 232 F.3d 911 (Fed. Cir. 2000) (unpublished table decision) ("We agree that the district court did not exceed its discretion is dismissing the action on its merits."); *Colida v. Nokia, Inc.*, 347 F. App'x 568, 569-70 (Fed. Cir. 2009); *MSA Prods. v. Nifty Home Prods.*, 883 F. Supp. 2d 535, 540 (D.N.J. 2012); *Parker v. Kimberly-Clark Corp.*, No. 11 C 5658, 2012 WL 74855, at *2-3 (N.D. Ill. Jan. 10, 2012); *Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670, 679-80 (E.D. Mich. 2003).

## III. DISCUSSION

I discuss the two steps of the analysis in order: First, the construction of the claim as a matter of law, and second, the comparison of the claim to the allegedly infringing product, as a matter of fact.

### A. Claim Construction

Courts generally need not conduct an elaborate claim construction analysis for design patents because the court should construe design patents as they are shown in the patent drawings. *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, 540-41 (D.N.J. 2012). "[A] design [patent] is better represented by an illustration 'than it could be by any description and a description would probably not be intelligible without the illustration.'" *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (citing *Dobson v. Dornan*, 118 U.S. 10, 14 (1886)); *see also Manual of Patent Examining Procedure* § 1503.01 (9th ed. 2015) ("[A]s a rule the illustration in the drawing is its own best description."). For those reasons, a court is not obligated to issue a detailed verbal description of the design if it would not be helpful. *Egyptian Goddess*, 543 F.3d at 679-80. Nonetheless, it is necessary to determine the scope of the design patent at issue. I will separately address (1) prosecution history estoppel and (2) the scope of the patent more generally.

### 1. Prosecution History Estoppel

The doctrine of prosecution history estoppel prevents a patentee from "recaptur[ing] in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (2002). It requires that "the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Id.* at 733.

> Where the patentee in the course of his application in the patent office has, by amendment, cancelled or surrendered claims, those which are allowed are to be read in the light of those abandoned and an abandoned claim cannot be revived and restored to the patent by reading it by construction into the claims which are allowed.

*Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 218 (1940); *see Festo*, 535 U.S. at 733-34. While prosecution history estoppel has more commonly been applied in utility patent proceedings, it applies to design patents as well. *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014).[4]

Whether prosecution history estoppel bars the infringement claim in this case turns on three questions: **(a)** whether there was a surrender of claim scope; **(b)** whether the surrender was for reasons of patentability; and **(c)** whether the accused design is within the scope of the surrender. *Id.*

---

[4]    "With respect to utility patents, prosecution history estoppel limits a patentee's ability to recover under the doctrine of equivalents, but does not limit literal infringement.... For design patents, the concepts of literal infringement and equivalents infringement are intertwined." *Pacific Coast*, 739 F.3d at 700-01. Thus, prosecution history estoppel applies to all design patent infringement claims. This is because "the test for design patent infringement is not identity, but rather sufficient similarity—whether 'the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs,' 'inducing him to purchase one supposing it to be the other.'" *Id.* (citing *Egyptian Goddess*, 543 F.3d at 683 (quoting *Gorham*, 81 U.S. (14 Wall.) at 528)).

**(a)** There was a surrender of claim scope during prosecution. In general, courts look "primarily to the wording of the claims in utility patents for the purpose of prosecution history estoppel, [but ...] look at the requisite drawings in design patents to determine whether a surrender has occurred." *Pacific Coast*, 739 F.3d at 702. Nonetheless, language used in a design patent, such as the title, is relevant to the infringement analysis. The title of a design patent, for instance, can help delineate the scope of the design patent's protections. *See P.S. Prods., Inc. v. Activision Blizzard, Inc.*, 140 F. Supp. 3d 795, 802-03 (E.D. Ark. 2014) (construing a design patent as for the ornamental design for a stun gun because the '294 patent's "sole claim is for '[t]he ornamental design for a stun gun, as shown and described'"); *see also Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670, 679-80 (E.D. Mich. 2003) (discussing the scope of a design patent and noting that it was for "[t]he ornamental design for a hat, as shown and described").

In this case, the title of the patent is relevant because the design patent was explicitly and intentionally narrowed to one article of manufacture during the prosecution history. Curver originally applied for a patent directed to a pattern for "furniture." (Ex. A). The PTO rejected this application, explaining its decision as follows:

> The title of the design must *designate the particular article*, which is the subject of the design. 37 CFR 1.153. The title of the design identifies the article in which the design is embodied by the name generally known and used by the public. MPEP 1503, I. The claim in a design patent must be directed to the design for an article. 35 U.S.C. 171.

(Ex. A). Curver then resubmitted the design patent as "[t]he ornamental design for a pattern *for a chair*." ('946 Patent (emphasis added); Ex. A; Ex. B). Each figure in the published patent is described as a view of a "design for a pattern *for a chair*." ('946 Patent (emphasis added)). The title of the patent is a "Pattern *for a Chair*." ('946 Patent (emphasis added)).

The scope of the claim was thus narrowed during the prosecution history. Curver surrendered a claim for an ornamental pattern "for furniture" and accepted a design patent for an ornamental pattern "for a chair." (Ex. A); (Ex. B; '946 Patent). This is just the sort of claim surrender that gives rise to prosecution history estoppel. *See Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1144 (Fed. Cir. 2004); *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1325-26 (Fed. Cir. 2003).

**(b)** Second, the claim scope was surrendered in order to secure the patent—indeed, as a *condition* of obtaining the patent. The PTO, rejecting the initial, broader application, explained that Curver's patent must "*designate the particular article*" that is the subject of the design. (Ex. A). A design patent extends to "an article of manufacture"; 35 U.S.C. § 171 provides that, "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." Thus, by statute, a design patent is limited to one article of manufacture, and an inventor of an ornamental design may obtain a patent for that design for that article.

Relevant regulations confirm that initial impression. Thus 35 C.F.R. § 1.153 states, in relevant part, as follows:

> The title of the design must designate the particular article. No description, other than a reference to the drawing, is ordinarily required. The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described. More than one claim is neither required nor permitted.

This regulation confirms that a design patent protects an ornamental design on one specified article of manufacture. The *Manual of Patent Examining Procedure* concurs: "In a design patent application, the subject matter which is claimed is the design embodied in or applied to *an* article of manufacture (or portion thereof) and *not* the article itself." § 1502 (9th ed. 2015) (first emphasis added).

Curver demurs. It argues that 35 U.S.C. § 289, which provides for damages in design patent infringement cases, allows infringement claims

11

against "any article of manufacture," not just for the same article of manufacture. (Pl. Br. 2-7). Section 289 provides as follows:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, *to any article of manufacture* for the purpose of sale, or (2) sells or exposes for sale *any article of manufacture* to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289 (emphasis added).

However, Section 171, which provides for design patents, clarifies that an inventor can obtain a patent for an ornamental design for an article of manufacture. Section 289, which provides for damages in design patent infringement cases, should not be read as creating a remedy that is broader than the right. Section 289 is premised upon a prior finding of infringement; that finding of infringement is the narrow gate through which any claim for damages must first pass. If Section 289 permitted damages in design patent cases whenever an individual used an ornamental design with any product, it would make a hash of the statutory scheme.

Curver's interpretation has been rejected by three district courts in which it has been asserted. First, in *Vigil v. Walt Disney Co.*, the court found that defendant's product did not infringe plaintiff's "duck call" largely because "plaintiff's duck call is not even an analogous article of manufacture when compared to Disney's key chain." 1998 U.S. Dist. LEXIS 22853, at *9-10 (N.D. Cal. Dec. 1, 1998). Second, in *Kellman v. Coca-Cola Co.*, the court found that plaintiff's design patent was directed to "[t]he ornamental design for a ['wing nut'] hat" and did not cover defendants using the "wing nut" design on t-shirts or bottle caps. 280 F. Supp. 2d 670, 679-80 (E.D. Mich. 2003). Third, in *P.S. Products, Inc. v. Activision Blizzard, Inc.*, the court held that a design patent for a stun gun did not extend to that image as used in a video game. 140 F. Supp. 3d 795, 801-03 (E.D. Ark. 2014). I agree with these three cases in finding that

design patents are limited in scope to the article of manufacture the design patent claims.

Curver's original application was for "Furniture Part" and "Furniture (Part of)." (Ex. A). The PTO objected, stating that the title of the design "must *designate the particular article*, which is the subject of the design." (Ex. A). Curver responded by designating the particular article as a chair. The surrendered claim was clearly related to patentability. Curver cannot, in this infringement action, "recapture" the claim it surrendered in the patent prosecution.[5]

**(c)** On the third issue, the accused design is surely within the scope of the surrender. From one point of view, what Curver surrendered was application of its patent to anything that was not a chair. Home Expressions' basket is not a chair.

If there is any doubt on this issue, it is only because Home Expressions' basket is not even within the scope of the patent as *originally* proposed. A basket would not reasonably be regarded as an item of "furniture."[6] Therefore, I

---

[5]    In this respect, the mode of interpretation of a design patent must be contrasted with that of a utility patent. In general, the title is not given weight in an action for infringement of a utility patent. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1312-13 (Fed. Cir. 1999). *Id.* "In short, utility patent titles are unimportant to claim construction because, unlike design patents, utility patents may take a variety of forms and may or may not use the same terms as the patent title." *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. 3-00-cv-0888-x, 2001 WL 1012685, at *4 (N.D. Tex. Aug. 20, 2001).

By contrast, the title of a design patent may be relevant to the scope of the design patent. *See P.S. Prods., Inc. v. Activision Blizzard, Inc.*, 140 F. Supp.3d 795 (E.D. Ark. 2014); *Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670 (E.D. Mich. 2003). As relevant here, it may designate the "article of manufacture" to which the design patent applies.

[6]    For instance, in *United States v. Quon Quon Co.*, the U.S. Court of Customs and Patent Appeals (which was replaced by the Federal Circuit) disputed whether wicker tabletops intended for use as patio furniture and made of woven rattan should be classified as "baskets" or "furniture." 46 C.C.P.A. 70 (1959). The tabletops were classified as "furniture" because they were sold and used only as tops of coffee or cocktail tables; "baskets" were a separate, non-furniture category. *Id.* at 73-74. In the end, baskets were not considered furniture unless they were being used for a non-basket purpose. That would not apply in this case.

suppose, it is arguable that this scope was not "surrendered" because it was never contemplated or claimed in the first place. As a basis for a claim of infringement, this argument is ironic, to say the least.

Requirements (a), (b), and (at least the spirit of) (c) are met. It would be reasonable to conclude that prosecution history estoppel bars Curver's claim that the scope of the patent extends to anything but a chair. Nevertheless, to remove doubt, I will for purposes of argument concede the issue of prosecution history estoppel and construe the scope of the patent directly.

### 2. Scope of Design Patent

The analysis above helps to clarify the scope of the '946 Patent.[7] The scope of a design patent is limited to the "article of manufacture"—*i.e.*, the product—listed in the patent. Thus the patent protects only a pattern for a chair. It does not protect that same pattern on a basket. That *Curver* manufactures a basket using the design only confuses the issue. Curver's claim must be that its patent was infringed; a basket, as such, cannot be infringed.

Curver argues that a design patent confers protection whenever an ordinary observer would view the two designs as substantially the same— regardless of the article of manufacture on which the design is located. In subsection III.A.1(b), *supra*, I explained that Curver's interpretation has been rejected by three district courts and is not supported by the relevant statutes and regulations. *P.S. Products* and *Kellman* rejected design patent infringement claims by finding that design patents cover one article of manufacture; they found that a design patents' protection does not extend to other articles of manufacture. *See P.S. Products, Inc. v. Activision Blizzard, Inc.*, 140 F. Supp. 3d 795, 801-03 (E.D. Ark. 2014); *Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670, 679-80 (E.D. Mich. 2003). *Vigil* relied on the fact that the accused product was

---

[7]      This analysis assume that the '946 Patent is valid. Home Expressions suggests otherwise, but seemingly concedes validity *arguendo* at the motion to dismiss stage. (*See* Def. Br. 3-4.)

not of the same article of manufacture. *Vigil v. Walt Disney Co.*, C-97-4147, 1998 U.S. Dist. LEXIS 22853, at *9-10 (N.D. Cal. Dec. 1, 1998). I agree with these three cases and hold that design patents are limited in scope to the article of manufacture that the design patent claims.

As noted above, even Curver's original, rejected patent application would not have encompassed Home Expression's design on a basket. (Ex. A; Ex. B). The original application was for a design on furniture. And what Curver got, as opposed to what it asked for, was a patent that protects against infringement for a particular "Y" design on chairs only.

For those reasons, I find that the '946 Patent is limited to an ornamental "Y" pattern, as shown in the patent's figures, as used in chairs. Its scope does not extend to other products or articles of manufacture.

### B. Claim Comparison

The second stage of the patent infringement analysis is claim comparison. Here, the claim (as construed in the preceding step) is compared to the allegedly infringing product. *See PC Connector Sols. LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005). In design patent cases, the court employs the "ordinary observer test." *Egyptian Goddess*, 543 F.3d at 670; *Pacific Coast*, 739 F.3d at 701. That test is as follows:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* (citing *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871).[8] The specific designs used for comparison are the figures in the patent and images of the accused product. *See Crocs*, 598 F.3d at 1302-03. "The patentee must establish that an ordinary observer, familiar with the prior art designs, would

---

[8]     This test has been codified in 35 U.S.C. § 289, which was discussed in subsection III.A.1(b), *supra*.

be deceived into believing that the accused product is the same as the patented design." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010); *see Crocs*, 598 F.3d at 1302-03.

In this case, the '946 Patent, which protects an ornamental "Y" design for a chair, is compared to Home Expressions' basket as shown in Figure 3. It is true that the "Y" design on the Home Expressions' basket is substantially similar to the "Y" design shown in the '946 Patent. However, the '946 Patent is for a pattern for a chair. A reasonable observer would not purchase the Home Expressions' basket, with the ornamental "Y" design, believing that he or she was purchasing what was protected by the '946 Patent—*i.e.*, the ornamental "Y" design applied to a chair. *See P.S. Prods.*, 140 F. Supp. 3d at 803 ("No reasonable person would purchase defendants' video game believing they were purchasing plaintiffs' stun gun."). Design features aside, a basket is not a chair, and could not be mistaken for one.

Design patterns are limited to their article of manufacture and do not provide protection outside of those bounds. *See id.* at 801-03; *Kellman*, 280 F. Supp. 2d at 679-80; *Vigil*, 1998 U.S. Dist. LEXIS 22853, at *9-10. Therefore, the complaint does not set forth a plausible claim that Home Expressions' basket infringes Curver's '946 Patent.

## IV. CONCLUSION

For the foregoing reasons, I grant Home Expressions' motion to dismiss the complaint. An appropriate order accompanies this opinion.

Dated: January 8, 2018

**KEVIN MCNULTY**
**United States District Judge**

16